CLARKE, TRUSTEE UNDER THE WILL OF PARSONS, *v.* ROGERS, TRUSTEE IN BANKRUPTCY OF THE ESTATE OF SHAW.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FIRST CIRCUIT.

No. 221. Argued April 16, 17, 1913.—Decided May 5, 1913.

The same person, considered in different capacities, may act as the giver and receiver of a fraudulent preference; and so *held* in a case where a trustee of several trusts, with knowledge of his insolvency, transferred property to one of the trusts to which he was indebted. See *Bush* v. *Moore,* 133 Massachusetts, 192.

The obligation resting on a defaulting testamentary trustee to restore the value of the assets embezzled is of a contractual character and the debt is provable although it is fraudulent and excepted from the discharge.

Under the laws of Massachusetts there may be a contractual obligation of one trust to another for payments improperly made from assets of the latter for the benefit of the former. *Bremer* v. *Williams,* 210 Massachusetts, 256.

Section 17 of the Bankruptcy Act enumerates debts provable under § 63a which are not discharged, and among them are included those that arise by the conversion of trust funds.

Equality between creditors is necessarily the ultimate aim of the Bank-

ruptcy act; and even if the dividend be very small, the court will not construe the act so as to allow one creditor to be preferred above the others.

There may be unity of the person and difference in capacities, but such unity imputes knowledge of the purpose for which the different capacities were exercised.

183 Fed. Rep. 518, affirmed.

THE facts, which involve the provisions of the Bankruptcy Act in regard to preferences and provable debts, are stated in the opinion.

*Mr. Felix Rackemann,* with whom *Mr. Harrison M. Davis* was on the brief, for appellant:

No successor trustee having been appointed until long after the transaction took place, and at the time of the alleged preference there being no creditor then existing and ascertained, there could be no debt provable in bankruptcy, and no preference within the meaning of the act.

The beneficiaries of the trusts under the Parsons will were not creditors of Shaw. They had an interest in having the trust funds restored, but the value of the missing securities was in no event due or payable to them. *Bennett* v. *Woodman,* 116 Massachusetts, 518.

There is no provable debt on a probate bond until the right to put the bond in suit has become complete. *Harmon* v. *McDonald,* 187 Massachusetts, 578; *Loring* v. *Kendall,* 1 Gray, 305.

There is no provable debt on a probate bond until some person is ascertained, other than the obligor, who will be entitled to receive the amount for which execution may be awarded. *Bennett* v. *Russell,* 2 Allen, 537, 541.

There is no liability apart from the bond. *Brooks* v. *Brooks,* 11 Cush. 18; *Conant* v. *Kendall,* 21 Pick. 36; *Johnson* v. *Johnson,* 120 Massachusetts, 455.

The contractual obligation, without which there can

be no provable debt, must be found in the probate bond. *Wheeler* v. *Freeman,* 13 Pick. 167; *Brooks* v. *Brooks,* 11 Cush. 18.

Apart from the bond, and considering the situation as it would have been had no bond been given or required, there was no contract obligation resting upon Shaw, in his capacity of testamentary trustee.

The obligation to restore the value of assets embezzled cannot be contractual, when the antecedent obligation not to embezzle is not contractual. The liability results from breach of the obligation and cannot be of a different nature. The defaulting trustee is bound to make good a defalcation for the same reason that he is bound to exercise due care in making investments; all his duties and liabilities are derived from the obligation of faithful administration, and that obligation arises, **not** *ex contractu,* but *ex lege.*

The complex relations involved in a trust cannot be reduced to the ordinary elements of contract. Ward's Pollock on Contracts, p. 231.

The true owner of goods wrongfully converted and sold may waive the tort and recover the money in assumpsit. This is a pure tort liability. Nor will the contract form of remedy lie if the wrong-doer has not sold the goods and received money for them. *Jones* v. *Hoar,* 5 Pick. 285; 1 Cooley on Torts, 3d ed., p. 160; Ward's Pollock on Contracts, p. 238; see Loveland, 4th ed., p. 669. *Crawford* v. *Burke,* 195 U. S. 176, distinguished.

At the time of the alleged preference, there was no one who could have sued Shaw in *indebitatus assumpsit.* He had converted trust securities. The record does not show how he had disposed of them, or whether he had sold them and received money for them. His liability was in the nature of tort. He was a tort-feasor in equity. *Loring* v. *Salisbury Mills,* 125 Massachusetts, 138, 153; *In re Tucker,* 153 Fed. Rep. 91, 96. But there was no one who could

sue him at law, and the doctrines of waiver of tort and *quasi*-contract do not apply, in default of a plaintiff entitled to invoke them. *Gould* v. *Emerson*, 99 Massachusetts, 154, 157; *Johnson.* v. *Johnson*, 120 Massachusetts, 165; *Henchey* v. *Henchey*, 167 Massachusetts, 77; *Minchin* v. *Minchin*, 157 Massachusetts, 265.

In the case at bar, the trust was open; there had been no accounting; no money was due any *cestui que trust*, and the amount of the trustee's liability by reason of his breaches of trust remained to be ascertained.

The decree can be supported only on fictions.

By a fiction of law, a contract relation is sometimes implied between two persons in order that one of them may have a remedy against the other in contract form. But in the case at bar, both the contract and the creditor are fictitious. *Eastman* v. *Wright*, 6 Pick. 316, 321.

It is obvious that there can be no real contract, or meeting of minds, or legal obligation between a person acting in one capacity and the same person acting in another capacity. Two persons, at least, are involved in the conception of the simplest legal right or obligation. Therefore, no man can be defendant in an action in which he is also plaintiff, either at law or equity. Lewin on Trusts, 8th Eng. ed., p. 91; 1 Perry on Trusts, 5th ed.; p. 11; *Prentice* v. *Dehon*, 10 Allen, 353; *Batchelder, Petitioner*, 147 Massachusetts, 465, 471; *Sigourney* v. *Wetherell*, 6 Met. 553, 557; *Benchley* v. *Chapin*, 10 Cush. 173.

It is not necessary that the debt should have been liquidated, and insolvency of the debtor makes no difference. The presumption is conclusive that the debt has been paid. *Choate* v. *Thorndike*, 138 Massachusetts, 371; *Bassett* v. *Fidelity &c. Co.*, 184 Massachusetts, 210; and see *Ipswich Mfg. Co.* v. *Story*, 5 Met. 310, 313; *Leland* v. *Felton*, 1 Allen, 531; *Mattoon* v. *Cowing*, 13 Gray, 387, 390.

When the right to demand and the liability to pay coexist in one person, the law presumes instantaneous pay-

ment and extinguishes the debt. Woerner, Executors and Administrators, § 311. See Article on Legal Fictions, 7 Harvard Law Review, p. 262.

The trust estate was not Shaw's creditor in a legal sense. Salmond, Jurisprudence, 2d ed., 283; *Taylor* v. *Davis*, 110 U. S. 330, 334.

Perhaps, on technical grounds, the strong equity of the surety under circumstances like those disclosed in this record could not be protected, if a preference were clearly shown. But where a creditor and a preference can only be discovered by resort to novel fictions of law, it would seem that the surety's equity ought to move the court to decide the question of preference or no preference in accordance with the actual facts of the case.

Shaw's knowledge of his own fraud is not to be imputed to the beneficiaries. But if it were possible to regard the beneficiaries as creditors and Shaw as their agent, Shaw's guilty knowledge could not be imputed to his innocent principals. *McNaboe* v. *Columbian Mfg. Co.*, 153 Fed. Rep. 967; *Lindsey* v. *Lambert Assn.*, 4 Fed. Rep. 48.

The equities in favor of the innocent beneficiaries of the Parsons trusts ought to forbid the expedient of inventing fictions in order to make out a voidable preference.

In *Bush* v. *Moore*, 133 Massachusetts, 198, the guardian was not both creditor and debtor; he was debtor and agent of the creditor. See Lowell on Bankruptcy, §§ 93, 100; *Murray* v. *Wood*, 144 Massachusetts, 195.

In England, where unliquidated claims arising from breach of trust are provable by express provision of the statute, 46 and 47 Victoria, c. 52, § 39 (1883), a voluntary payment to make good a breach of trust is not held a preference. *Sharp* v. *Jackson* (1899), A. C. 419; Robson's Bankruptcy, 7th ed., p. 237; *Orret* v. *Corser*, 21 Beav. 52; *Ex parte Shaw*, 1 Glyn & Jameson's Cases in Bankruptcy, 127.

*Mr. Melvin M. Johnson*, with whom *Mr. Henry M. Rogers* and *Mr. A. Farley Brewer* were on the brief, for appellee.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Petition by appellee as trustee in bankruptcy of the estate of John O. Shaw to recover a preference.

The facts are these: The bankrupt, John O. Shaw, was, for a long time prior to the adjudication in bankruptcy, trustee under the will of Samuel Parsons, late of Newton, in the county of Middlesex, Massachusetts, of two trusts, one for the benefit of Charles A., James H. and Henry B. Parsons, and the other for the benefit of E. F. and E. A. Parsons.

After proceedings in bankruptcy had been commenced, Shaw resigned the trusts and his resignation was accepted by the Probate Court of Middlesex County on March 25, 1908, and appellant, George Lemist Clarke, was appointed trustee of the trusts and duly qualified.

In the month of January, 1908, and within four months before the filing of the petition in bankruptcy against him and whilst he was insolvent, Shaw was largely indebted to each of the trusts and to himself as trustee and transferred from himself individually to the trusts and to himself as trustee thereof as follows: To the trust for C. A. Parsons *et al.*, seven of the $1,000 collateral trust 4% bonds of the American Telephone & Telegraph Company (numbers specified), and two $1,000 Chicago, Burlington & Quincy Railroad Company 3½% Illinois Division (numbers specified); to the trust of E. F. and E. A. Parsons, twelve $1,000 Northern Pacific—Great Northern 4% joint bonds, Chicago, Burlington & Quincy collateral.

The transfers were made by Shaw with knowledge of his insolvency and with intent to prefer the trusts and himself

as trustee, and the effect (it is alleged) of such preference, if not avoided, will be to enable the trust estates and himself as trustee thereof (being one of his individual creditors) to obtain a greater percentage of his debts than any other of his creditors of the same class.

The petition prayed that the bonds be declared to be the bonds of petitioner, appellee here, and that Clarke, appellant here, be ordered to execute such instruments as might be necessary to transfer the title to and possession of all the bonds to petitioner.

The answer of appellant denied only that the transfers were made within four months of the bankruptcy, that Shaw was at the time of the transfer insolvent, that all the trusts were his creditors then or have become so since within the meaning of the statute, and denies that he intended by the transfers to give a preference or that they constitute a preference.

The decree of the District Judge was that five of the seven Telephone and twelve of the Northern Pacific-Great Northern Railroad Company 4% joint bonds and all of the coupons thereon payable after January, 1908, were the property of the trustee in bankruptcy, appellee here.

It was further adjudged that the American Telephone & Telegraph Company collateral trust 4% bonds (numbered 20,818 and 20,819) were in part the property of the appellant as trustee and of appellee as trustee. The bonds were directed to be sold. The decree was affirmed by the Circuit Court of Appeals.

The District Court found the facts. They are summarized in its opinion as follows:

"The bankrupt, being insolvent and knowing himself to be insolvent, was discovered by the surety on his bond as trustee under the Parsons will not to be in possession of some of the securities which formed a part of the trust estate and which should have been in his possession as

trustee. He was being urged by the surety to make good this shortage. For the purpose of doing so, he placed the bonds in question in a safe deposit box, taken and agreed on by himself and the surety as a separate place of deposit for the securities belonging to this trust. In the box were placed also those securities belonging to the trust funds which had not gone out of his possession. All the securities thus placed in the box and held as constituting the trust funds have since remained there. The bankrupt has been removed as trustee and the respondent, his successor in the trust, has at present the possession and control of the contents of the box, including the bonds in question.

"The bankrupt had at the time more than twenty-five other trust estates in his charge as trustee. There was, in the case of each, a shortage for which he was responsible and he knew the fact to be so. The total amount of these shortages exceeded $350,000.

"It has not been shown that any of the bonds used as above to make good the shortage in the Parsons trust estate, or that any of the money wherewith the bankrupt purchased those bonds, can be identified as belonging to any one of the other trust estates in the bankrupt's charge. He drew out and used to purchase certain of the bonds a savings bank deposit of $1,500 belonging to one of the Parsons trust funds; but with that exception the money wherewith the bonds were bought as well as the bonds themselves must, for the purposes of the questions to be decided, be regarded as the bankrupt's individual property at the time he set them apart in the manner stated, to be thereafter held as trust property."

The question in the case is, Do these facts show a preference within the meaning of the Bankruptcy Law?

Putting to one side the identity of Shaw as an individual and Shaw as the trustee of the trusts, there are the elements of a preference. In other words, there is indebtedness; Shaw is indebted to all of the estates of which he

was trustee. He used his individual property to pay the indebtedness to the Parsons trust and he thus gave that trust a preference over the others. It was enabled to the extent of the property transferred to obtain a greater percentage of its debts than the other trusts. What, then, stands in the way of setting the transfer aside? The debt was not a provable one in bankruptcy, it is contended, and on that contention the case is rested and to it we may direct our considerations, and in that the provisions of the statute become necessary elements.

Section 60a, as amended, is as follows:

"A person shall be deemed to have given a preference, if, being insolvent, he has, within four months before the filing of the petition, . . . made a transfer of any of his property, and the effect of the enforcement of such . . . transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

A creditor is defined to be "any one who owns a demand or claim provable in bankruptcy, may include his duly authorized agent, attorney, or proxy."

Debt includes any debt, demand or claim provable in bankruptcy. Transfer includes the sale and every other and different mode of disposing of or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift or security.

Appellant deduces from these definitions, that no question of a preference can arise except when the transfer is made to the owner of a provable claim, or to his agent, and that no claim is provable except when enumerated in § 63a, and none other can be liquidated under paragraph b. Of the claims enumerated in § 63a the fourth is the only one with which we are concerned. It is as follows: "(4) Founded on an open account, or upon a contract express or implied." The final contention of appellant is that one, to receive a preference, must be a

creditor of the bankrupt upon a contract express or implied. It is not enough that there be some kind of legal or equitable claim against the bankrupt. These postulates laid down, he builds upon them an argument of great technicality to show that the trusts of Shaw were not his creditors and therefore could not receive from him a preference. An obligation to the trusts is not denied, but it is an obligation, it is asserted, which was represented entirely by his bond and had no remedy but by a suit on the bond. The liability of Shaw, it is further contended, considered independently of the bond, was in the nature of a pure tort liability which could not be waived and the remedies of a contract availed of.

That some torts may be waived and be the bases of provable claims is decided in *Crawford* v. *Burke,* 195 U. S. 176, 187. Crawford and one Valentine were stockbrokers and dealers in investments. They had in their possession certain shares of stock which they held as a pledge and security for the amount due them by Burke on the stock. They sold Burke's reversionary interest in the stock whereby it was wholly lost. He sued them in trover. They set up their discharge in bankruptcy. It was held, the court speaking through Mr. Justice Brown, to be clear that the debt of Burke was embraced within the provisions of paragraph a, as one "founded upon an open account, or upon contract, express or implied," and might have been proven had he chosen to waive the tort and take his place with other creditors of the estate. The discharge in bankruptcy was held on other provisions of the act to be a defense. The case was applied and followed in *Tindle* v. *Birkett,* 205 U. S. 183, 186, in an action to recover damages claimed to have been sustained by false and fraudulent representations. It was decided that the claim was one provable under § 63a as "founded upon an open account or upon a contract, express or implied." It is, however, said that these cases are explained and limited

in *Grant Shoe Co.* v. *Laird Co.*, 212 U. S. 445, to instances "where there is a claim arising out of a contract, but of such a nature that there is at the same time an independent remedy in tort." To make this distinction available appellant must establish his contention that there was no contractual relation, either between Shaw and his trusts or the *cestuis que trust* of the trusts; in other words, that the sole liability was upon Shaw's bond. There is no other remedy, is the repeated insistence, and that only after a final accounting has been had in the Probate Court showing a liquidated balance due from the accountant. Then and not until then, as we understand appellant, a creditor emerges with a provable claim. Appellant, however, halts somewhat at the logic of his argument and ventures to say that a decision in his favor does not necessarily involve a decision that a claim upon the bond of the defaulting trustee could not be proved for a dividend in the name of the probate judge. But is not this concession in opposition to the relation asserted to exist between a provable debt and a transfer of property on account of it being a preference?

We have considered the contentions of appellant somewhat minutely, so as to fully present them. The lower courts, while giving attention to the technical elements of appellant's arguments, cut through them to apply the fundamental purpose of the Bankruptcy Law, that is, equality between creditors. The District Court, following *Bush* v. *Moore*, 133 Massachusetts, 198, decided in 1882 under a provision of the Massachusetts insolvency law which was similar to the provision in the Bankruptcy Act of the United States, found no difficulty in the same person, considered in different capacities, acting as giver and receiver of a fraudulent preference. The Court of Appeals met the contention of appellant that there must be a contractual relation and decided that it existed, both on account of the bond and independently of the bond.

The court said: "It is true that, in the ordinary course, enforcing the bond would be at the end of the proceedings and not at the beginning. Notwithstanding, as the equitable rules which govern bankrupts always look to the end and disregard the intervening details as only steps to reach the end, there was in this case a contract from the beginning, that is, the bond, which was capable of liquidation on the rules explained in *Tindle* v. *Birkett*, 205 U. S. 183. Aside from this and independently of the bond, we believe there is an obligation resting on a defaulting testamentary trustee to restore the value of the assets embezzled, which is of contractual character."

But this, appellant contends, is to evolve "two moral persons out of one embezzler." The criticism only can be made by putting out of view what the "one embezzler" represents. He is one being but acts in more than one capacity, and in all of his capacities he has duties and obligations. The relation of a trustee to the trust property is not the same as his relation to his individual property. He certainly may incur obligations to the trust. He can only satisfy the obligations out of his individual property, and by doing so may deplete it, make it deficient, to satisfy its obligations. These are realities, not fictions. We must overlook essential things to disregard them, and hence the decision in *Bush* v. *Moore, supra.* Moore was the guardian of his son and wrongfully appropriated to his own use the moneys of his ward. Within six months preceding his insolvency, and being insolvent, intending to restore the funds he had appropriated, he deposited in the defendant bank the necessary sum derived from his private property. His assignees in insolvency sued in equity to recover the sum as a preference, alleging that he at the time was insolvent and acted in contemplation of insolvency. The Massachusetts statute made void any payment or conveyance of property by an insolvent "to any creditor or person having a claim against

him," and gave power to the assignee to recover the property.

These contentions were made: (1) The ward was not a creditor of the guardian or a person having a claim against him. (2) The act of the guardian did not constitute a preference which was avoidable by reason of his insolvency. (3) Had the misappropriation continued there would have been no claim by the ward which could have been the foundation of a suit. (4) His remedy was to summons the guardian into the probate court and then, upon adjudication there, or if he failed to account, there would have been only the remedy for failure to account or to comply with the decree of the court.

The contentions, it will be observed, were like those made in the case at bar. They were all rejected. It was held that the title to the property continued in the ward, the guardian having its custody only, and he having wrongfully used it, there was a just claim on the part of the ward that the integrity of the fund should be restored. The court said: "The title of property of one under guardianship continues always in the ward; the guardian has the custody merely. If, availing himself of that custody, he wrongfully uses it, there is a just claim on the part of the ward that the integrity of the fund shall be restored. It is not important in what form the ward is compelled to seek this remedy, or that the wrongful act of the guardian will not immediately afford a ground of action against him. Even if, upon a settlement in the Probate Court, it might have been held that the lawful and proper charges of the guardian would exceed the amount of his spoliations, there was not the less a just claim that the ward's property which had been unlawfully dealt with should be replaced."

To the contention that two persons were necessary to consummate a preference, one to transfer and the other to receive the property, the court answered: "But where

the same person acts as the giver and receiver of the security, the occurrence and participation of two parties to the fraudulent preference exists. . . . One individual acting in two capacities, debtor and on behalf of the creditor, may constitute the two persons contemplated by the statute." And, supplying the element of knowledge of the insolvency and the preference required by the statute, the court said that the ward was bound by the knowledge of his guardian.

The case is certainly determinative of appellant's contention that accounting in the Probate Court was necessary as a condition to a provable claim, or that a suit on a bond was the only remedy available for the misappropriation of funds by a guardian. This applies as well to a trustee; and that there may be a contractual obligation of one trust to another under the laws of Massachusetts is decided in *Bremer* v. *Williams*, 210 Massachusetts, 256. In that case a person who was the sole trustee of two separate estates paid the taxes due from one of them with money embezzled from the other. It was held that the new trustee of the latter could maintain suit in equity to recover from another unjustly enriched by the embezzlement. The liability of the latter to the former, the court said, grew out of an implied or constructive obligation, and did not rest upon an express trust, and, being such, the statute of limitations would be a bar in equity as well as in law. In other words, the court recognized that from the misuse of the funds the law would imply an obligation to repay. This ruling brings the case at bar within *Crawford* v. *Burke* and *Tindle* v. *Birkett*, even if their application be as limited as appellant contends. It may be questioned if they are so limited. They recognize the relation of § 63a to § 17. Section 17 excludes certain debts from discharge, among others, those created by the bankrupt's "fraud, embezzlement, misappropriation, or defalcation while acting as an officer or in any fiduciary

capacity." It was said in *Crawford* v. *Burke*, "If no fraud could be made the basis of a provable debt, why were *certain* frauds excepted from the operation of the discharge?" The question was pertinent in view of the language of the section. It provides that 'a discharge in bankruptcy shall release a bankrupt from all of his provable debts, except such as,' etc. The relation of the section was also recognized in *Friend* v. *Talcott, ante,* p. 27. It is there declared that § 17 enumerates the debts *provable* under § 63a which are not discharged. Among them, we have seen, are those created by fraud, embezzlement, misappropriation or defalcation in any fiduciary capacity. It would seem, therefore, to follow that the conversion of trusts funds creates a liability provable in bankruptcy.

The Court of Appeals expressed the hardship of a contrary conclusion: "Moreover," the court said, "it will be a great hardship if the various estates of which Shaw was trustee cannot recover any part of their loss of about $350,000 by sharing in his bankrupt estate. This may, of course, in this instance, be but a very small dividend, but in another instance it might be very near the face of the default. Any construction which would leave such a result as that cannot, of course, be accepted unless fairly forced upon us."

In this, we think, the court was right. Equality between creditors is necessarily the ultimate aim of the Bankrupt Law, and to obtain it we must regard the essential nature of transactions, not their forms or accidents. As we have said, there may be an unity of the person in the individual and the trustee; of the individual and the guardian; we must look beyond it to the difference in his capacities and the duties and obligations resulting from it. These duties and obligations are as distinct and insistent as though exercised by different individuals and have the same legal consequences. The unity of the person has, of course, an effect. It constitutes such re-

lationship between the different capacities exercised as to impute knowledge of their exercise and for what purpose exercised. *Bush* v. *Moore, supra; Atlantic Mills* v. *Indian Orchard Mills,* 147 Massachusetts, 268, 282; *S. C.,* 102 U. S. 263; *Atlantic Bank* v. *Merchants' Bank,* 10 Gray, 532, cited in *United States* v. *State Bank,* 96 U. S. 30, 36.

*Decree affirmed.*

MR. JUSTICE HOLMES concurs in the result.