## CROSBY v. SPROUL et al.

(District Court, D. Massachusetts. January 14, 1927.)

No. 2656 Equity.

1. **Frauds, statute of** ⊚➾139(4)—**Questions under statute disappear after oral agreement relating to land is executed.**

When an oral agreement relating to land has been executed, questions arising under statute of frauds disappear.

2. **Guardian and ward** ⊚➾62—**Effect will be given to guardian's oral agreement to hold real estate as security for money borrowed from ward's estate.**

Effect will be given to an oral agreement of guardian at time of borrowing money from ward's estate that real estate would be held as security for repayment thereof.

3. **Bankruptcy** ⊚➾303(4)—**Evidence held to show guardian's agreement to hold real estate as security for money borrowed from ward's estate, precluding recovery by guardian's trustee in bankruptcy.**

Evidence *held* to show that guardian, at time of borrowing money from ward's estate, agreed with himself as guardian to hold real estate as security for repayment thereof so as to preclude trustee's recovering such payment as preferential after bankruptcy of guardian.

4. **Bankruptcy** ⊚➾165(1)—**In order to constitute "preference," transaction must result in diminution of distributable estate.**

In order that payment made by bankrupt constitute a "preference," it is essential that transaction result in diminution of distributable estate, and transfers of property, or proceeds to which bankrupt would not have been entitled, do not have this effect and are not preferential.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Preference.]

5. **Bankruptcy** ⊚➾165(1)—**Trustee cannot recover payment made by bankrupt of sum borrowed on policy payable to wife with no surrender value in trustee's hands.**

Trustee in bankruptcy cannot recover, as preferential payment, sum borrowed by bankrupt on insurance policy payable to his wife and having no surrender value in hands of trustee, since transaction did not result in diminution of distributable estate.

6. **Bankruptcy** ⊚➾164—**Sum borrowed by bankrupt, after knowledge of insolvency, and used in payment of loan, is recoverable by trustee.**

Sum borrowed by bankrupt after knowledge of insolvency, and used in payment of loan, may be recovered by trustee as preferential payment.

In Equity. Suit by Arthur P. Crosby, as trustee of Fred W. Sproul, bankrupt, against Fred W. Sproul and another, to recover alleged preferences. Decree of partial recovery for plaintiff.

P. Gerald Ryan, of Ayer, Mass., and Phipps, Durgin & Cook, of Boston, Mass., for plaintiff.

Walter B. Grant and Henry E. Whittemore, both of Boston, Mass., for defendant Sproul.

Edwin A. Bayley, of Boston, Mass., for North End Sav. Bank.

MORTON, District Judge. The plaintiff is the trustee in bankruptcy of Fred W. Sproul. He sues to recover as preferences certain payments made by Sproul individually to himself as guardian of Ella F. DeCoster. The bankruptcy proceeding against Sproul was instituted on February 20, 1926; the payments in question were made on or about November 19, 1925. The case was heard largely on oral testimony. The facts are as follows:

In 1917 Sproul was carrying on business as a commission merchant under the name of Sproul, Paul & Co. He was at that time guardian of Ella F. DeCoster, an insane person. During the latter part of that year or the first part of 1918, Sproul borrowed from the estate of his ward $5,500. He testified that he made notes for that amount to himself as guardian, carrying interest at 6 per cent.; that he did so because the income from the savings bank deposits was not quite sufficient to meet the board bills of his ward in the state institution where she was confined; that he was amply solvent and in good credit; that the going rate for money was 6 per cent., and by loaning the money of his ward to himself at this rate the income was enough to pay her bills; that he paid interest on the loan into the guardian account and from there paid it to the state for her board; that he then owned certain real estate in Allston; that when he took this money from the guardian account, he considered that this real estate should be security for it and used the money with that understanding; that he talked with his wife about the matter at that time and asked her whether she was content to let her dower interest in the real estate also stand as security for this loan, and she agreed to do so. Sproul further testified that he did not execute any mortgage because he did not think it necessary, as the whole thing was in his own hands; that he supposed there was no need of a mortgage; that he knew the property could be attached as his, but he knew at the time of the loan that there was no cause for attaching; that when he made financial statements he always carried the notes as an unsecured liability and this property as an asset.

Sproul's business became unsuccessful. The Allston property was sold by himself and his wife, and $3,500 was received over and

above all liens and charges against it. This money was, on November 19, 1925, deposited in the various savings banks to the guardian account. At the same time Sproul paid into his guardian accounts $1,000, which he borrowed on his life insurance, and $120 which he borrowed from his sister. These are the three sums which the trustee seeks to recover.

The notes to himself as guardian are not produced, having perhaps been paid by the transfers here in question. There is nothing in writing to support Sproul's testimony. His wife testifies that she remembered his talking with her about the loan from the estate of the ward and about the Allston property being security for the payment of it, and that she said that she would sign any papers for that purpose, and that she did sign such papers when the property was sold. Miss Johnson, who was for many years bookkeeper for Sproul but is not now in his employ, testified that in 1924, when Sproul was removing his place of business from North Market street to Commercial street, she asked him why he did not sell the Allston property, and he told her that it was held against the De Coster account and he could not sell it. All three appeared to be truthful witnesses. There was no conflicting testimony.

[1] At the conclusion of the arguments I made an oral finding of facts in which I said that Mr. and Mrs. Sproul and Miss Johnson had testified with substantial accuracy, and that their testimony should be accepted. I see no sufficient reason to doubt the correctness of that conclusion.

The real question is whether the evidence establishes a trust in the Allston real estate to pay the indebtedness to the ward's estate. Sproul's position is that, dealing with himself as guardian, he agreed at the time when he took the money to hold the Allston property as security for the repayment of it. There having been no writing, such an agreement, if executory, would be within the statute of frauds and unenforceable. But when an oral agreement relating to land has been executed, questions under this statute disappear. If another person than Sproul had been the guardian, and the transaction were in other respects the same, an equitable interest in the land would unquestionably have been created; and the payments would not be preferential. Westall v. Wood, 212 Mass. 540, 544, 545, 99 N. E. 325; Hurley v. Atchison T. & S. F. R. Co., 213 U. S. 126, 29 S. Ct. 466, 53 L. Ed. 729; Thompson v. Fairbanks, 196 U. S. 516, 25 S. Ct. 306, 49 L. Ed. 577; Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075.

[2] The difficulty with the case arises from the fact that Sproul was both borrower and lender. I was at first of opinion that the law did not recognize such a transaction; that to do so would open too wide a door for fraud, a view which is reflected in Tullis v. Attica First National Bank, 60 Ind. 556; Bollinger v. Bollinger, 154 Cal. 695, 99 P. 196; Sheehan v. Sullivan, 126 Cal. 189, 58 P. 543, dealing with the burden of proof in somewhat analogous cases; and I so expressed myself at the conclusion of the arguments. But upon a careful examination of the authorities, I am unable to find any support for that opinion. There appears to be no rule of law which invalidates an agreement of this character because the fiduciary is dealing with himself. Apparently it is a question of fact whether the agreement was made; and if the evidence satisfies the court that it was made, effect will be given to it. This view avoids possibilities of grave injustice to cestuis and wards to which the hard and fast rule might expose them. Clarke v. Rogers, 228 U. S. 534, 33 S. Ct. 587, 57 L. Ed. 953, and Bush v. Moore, 133 Mass. 198 are distinguishable, in that in neither was there any agreement by the defaulting fiduciary to give security on certain of his property, contemporaneous with the taking from the estate.

[3] As the evidence does in fact satisfy me that Sproul at the time of loaning the money and thenceforward regarded the Allston property as held by him as security for the loan, there must be a decree dismissing the bill as to this item.

[4, 5] As to the $1,000 borrowed on the insurance policy: The facts are somewhat meager. It is said that Mrs. Sproul was the beneficiary and that the policy was so drawn as to have no surrender value in the hands of the trustee. Mrs. Sproul pledged her interest in it to enable her husband to raise money to repay what he had taken from the ward's estate. In order to constitute a preference, it is essential that the transaction result in a diminution of the distributable estate. Transfers of property—or the proceeds of property—to which the bankrupt would not have been entitled, do not have this effect and are not preferential. Vitzthum v. Large (D. C.) 162 F. 685; Collier on Bankruptcy (13th Ed.) p. 1277. The new debt created by the loan on the policy did not increase the total indebtedness because offset by a corresponding reduction in the claim of the ward.

It follows that this sum is not recoverable.

[6] As to the $120 obtained by Sproul from his sister: Here again the facts are meager. Sproul testifies that he borrowed the money

from his sister and paid it to the ward's estate. At the time when he did so he knew that he was insolvent. The transaction was not contemporaneous with the taking of the money from the estate. The question is covered by Bush v. Moore, ubi supra. The fact that the money was borrowed for the express purpose of making this payment does not save it from being a preference.

Decree for plaintiff for $120.

Neither party takes costs.