**WOFFORD OIL CO. OF GEORGIA v. HATCHER.**

**HATCHER v. WOFFORD OIL CO. OF GEORGIA.**

No. 7424.

Circuit Court of Appeals, Fifth Circuit.

Nov. 6, 1934.

336

O. C. Hancock, of Atlanta, Ga., and Harry S. Strozier, of Macon, Ga., for appellant and cross-appellee.

Theo. J. McGee and James Madden Hatcher, both of Columbus, Ga., for appellee and cross-appellant.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The trustee in bankruptcy of A. J. Little, who was adjudged bankrupt on March 29, 1932, on an involuntary petition filed on March 14, 1932, filed a bill in equity against the appellant, Wofford Oil Company of Georgia, to recover the sum of $7,800 paid by the bankrupt to the appellant on November 28, 1931, to recover the alleged value of described personal property transferred by the bankrupt to the appellant on March 9, 1932, and to set aside and cancel a security deed, dated November 25, 1931, and a warranty deed dated March 9, 1932, whereby the bankrupt conveyed to appellant his equity in his home. The bill attacked each of the above-mentioned transfers on the ground that it was a voidable preference and a voidable fraudulent conveyance under sections 60b, 67e, and 70e of the Bankruptcy Act, 11 USCA §§ 96 (b), 107 (e), 110 (e). Following findings to the effect that the bankrupt was insolvent on the date of each of the above-mentioned transfers, that at the time of each of said transfers made in November, 1931, the appellant had reasonable cause to believe that the enforcement thereof would effect a preference, and that each of said transfers made in March, 1932, was a voidable fraudulent conveyance, the court by its decree adjudged that the appellee recover of the appellant $2,245, the ascertained value of personal property conveyed by the hereinafter mentioned mortgage, dated November 25, 1931, made by the bankrupt to the First National Bank of Columbus, Ga., and the amount of the ascertained value of the personal property transferred by the bankrupt to the appellant on March 9, 1932, and that the above-mentioned transfers made in March, 1932, be canceled as fraudulent conveyances. The appellant complains of the decree in so far as the same is adverse to it. By cross-appeal the trustee in bankruptcy complains of the failure of the court to adjudge that he recover from appellant the sum of $7,800, the sum received by the bankrupt from the bank and paid by him to the appellant, with interest on that sum.

By written contract entered into between the appellant and the bankrupt in August, 1922, the bankrupt became the appellant's agent in the city of Columbus, Ga., to sell on commission appellant's motor fuel known as "Woco Pep" and its greases and oils known as "Woco" greases and oils, and became appellant's lessee of described filling and automobile service stations located in Columbus. That agency continued from the time the contract was entered into until about February 22, 1932, when the bankrupt resigned the agency. By the terms of that contract, it could be terminated by either party on giving the other party sixty days' written notice, and appellant had the right to cancel the contract on forty-eight hours' written notice upon the happening of one or more of thirteen stated events, the enumerated events including the following: Failure of

the bankrupt to pay rent when due; the failure of the bankrupt to operate the rented filling stations continuously, effectively, and satisfactorily to appellant; the failure of the bankrupt to render services to customers as provided for in the contract to the satisfaction of the appellant; the selling or offering for sale by the bankrupt of any gasoline, motor fuel, oils, and greases not purchased or acquired from appellant; and the failure of the bankrupt to account for goods, wares, or merchandise of appellant delivered to the bankrupt, or the money and funds obtained from the sale of products of appellant promptly as provided in the contract. After the appellant through its agents knew that the bankrupt had failed to pay rent when due, had converted to his own use moneys collected from customers, had sold gasoline not purchased from appellant, had failed promptly to account for goods, wares, and merchandise purchased from appellant, had failed to render services to customers satisfactorily to appellant by short measuring products sold to customers, and after appellant had arranged to put its own employee in charge of property in Columbus which theretofore had been entrusted to the bankrupt, in November, 1931, when the bankrupt owed the appellant approximately $8,000 in consequence of above-mentioned defaults, an agreement was entered into between the bankrupt and the appellant under which the bankrupt was to borrow from one of the banks in Columbus the sum of $8,000 and pay it over to the appellant, the bankrupt to execute to the bank a mortgage on his trucks, automobiles, tanks, office furniture, and other equipment to secure the loan made by the bank, and to further secure the bank the appellant was to execute an agreement with the bank to purchase the note made to it by the bankrupt upon request of the bank in case of nonpayment by the bankrupt. In pursuance of that agreement, the bankrupt, on November 25, 1931, obtained from the First National Bank of Columbus $7,800 on a note for $8,000 with interest from date, secured by a mortgage made by the bankrupt to said bank conveying described personal property, all of which was located at the various filling stations operated by the bankrupt in Columbus, Ga., and was found to have a value of $2,245; and the appellant agreed with said First National Bank that at any maturity date of said loan or of any renewal thereof, in case said bank should for any cause desire said loan paid or call the same or any balance thereof, the appellant would purchase the unpaid note and pay par there-

for, the bank agreeing to transfer the unpaid note and security held therefor to appellant. Pursuant to that agreement, the appellant, after the bankruptcy occurred, acquired from the bank the note made to it by the bankrupt. Contemporaneously with the just mentioned transaction, the bankrupt executed to appellant a security deed, dated November 25, 1931, conveying to appellant the bankrupt's equity in his residence property in Columbus, which security deed purported to be given to secure a demand note for $8,000 made by the bankrupt to the appellant, but was intended also to indemnify the appellant as to the liability it incurred by its agreement to purchase from the bank the note made to it by the bankrupt.

The finding that the bankrupt was insolvent at the time of the above-mentioned transactions in November, 1931, and thereafter, is complained of because of the failure to include in the bankrupt's assets the good will or going concern value of his business, which counsel for appellant contend had a value of between $30,000 and $40,000. That contention was based on evidence and findings to the effect that between the year 1922, during which the agency contract between appellant and the bankrupt was entered into, and November, 1931, the bankrupt's monthly sales of Woco Pep increased from twenty-five or thirty thousand gallons to more than one hundred and twenty thousand gallons, and that during that period the bankrupt's sales of other petroleum products of the appellant increased similarly, that for several years prior to February 22, 1932, the bankrupt supplied appellant's petroleum products to from fifteen to twenty filling stations, five of which were leased by the bankrupt from the appellant at a monthly rental of $705.85, others being leased by the bankrupt from other owners at a monthly rental of approximately $700, and that from commissions earned by the bankrupt under his contract with the appellant the bankrupt ordinarily had a substantial net income after paying rents and other expenses. Though the contract between appellant and the bankrupt was profitable to the bankrupt while it lasted, the continuance of the benefits or advantages accruing to the bankrupt from the agency depended upon the continuance of the agency, which at the time in question was subject, on then existing grounds, to be canceled by appellant on forty-eight hours' written notice. The bankrupt was without right to assign or transfer to another the agency contract, or to enable another to enjoy the benefits or advantages thereof after the cancel-

lation of that contract. He had no salable interest in the business of selling appellant's products in the territory covered by his agency operations. He was without power to enable his assign or successor to enjoy the benefits or advantages which accrued from the agency while it lasted. That he realized that his connection with the appellant as agent had not resulted in his acquiring a good will having any exchangeable value is indicated by his giving up the agency without asking or getting anything for it and without waiting for it to be canceled. His interest was so contingent and unsubstantial as to be devoid of appreciable value as an asset. Camden v. Stuart, 144 U. S. 104, 115, 12 S. Ct. 585, 36 L. Ed. 363; Menendez v. Holt, 128 U. S. 514, 9 S. Ct. 143, 32 L. Ed. 526; Seabrook v. Grimes, 107 Md. 410, 68 A. 883, 16 L. R. A. (N. S.) 483, 126 Am. St. Rep. 400; 12 R. C. L. 978. The failure to include in the bankrupt's assets an item or sum for the good will or going concern value of his business of selling appellant's products on commission was not erroneous.

Appellant complains of the decree on other grounds, none of which is deemed to be tenable or to be such as to justify discussion.

The claim of the cross-appellant, the trustee in bankruptcy, that he was entitled to recover from the appellant the sum of $7,800, with interest thereon, is based upon the contention that, within the meaning of applicable provisions of the Bankruptcy Act (11 USCA § 96 (a), (b), the transfer of that sum to the appellant constituted a preference in the amount thereof. Under the statute, for a transfer by an insolvent debtor to be a voidable preference, the enforcement of such transfer must have the effect of enabling one of the transferor's creditors to obtain a greater percentage of his debt than any other of such creditors of the same class. In the circumstances attending the transfer of the $7,800 to the appellant, it did not by itself have the effect of enabling the appellant to obtain a greater percentage of its debt than any other of the bankrupt's creditors of the same class. That transfer was a part of a transaction other parts of which were an agreement by the appellant to purchase at par the note for $8,000 and interest made by the bankrupt to the bank, and the execution by the bankrupt to the appellant of a note for $8,000 and interest, secured by the bankrupt's interest in real estate, the only consideration for which note was the previously existing debt of the bankrupt to the appellant and the appellant's agreement to

purchase at par the note given by the bankrupt to the bank. If the mortgage feature of the bankrupt's transaction with the bank had been omitted, it could not plausibly have been contended that the transfer of the $7,800 had the effect of enabling the appellant to obtain a greater percentage of its debt than any other of the bankrupt's creditors of the same class, as, contemporaneously with that transfer, the appellant obligated itself to purchase at par the note for $8,000 and interest given by its insolvent debtor to the bank, and, after that transfer was consummated, the bankrupt owed the appellant as much as he owed before the transaction occurred. Manifestly the $7,800 was obtained by the bankrupt on the credit of the appellant. A preference or preferences resulted from the transaction in question in so far as thereby the appellant acquired anything which had debt paying or debt securing power. Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 21 S. Ct. 906, 45 L. Ed. 1171. In considering the transactions in question, what is to be regarded is the essential nature of them, not merely the forms given to them. Clarke v. Rogers, 228 U. S. 534, 548, 33 S. Ct. 587, 57 L. Ed. 953. It fairly appears that the purpose and effect of the November, 1931, transactions in question as a whole were to enable the appellant, without any reduction of the bankrupt's debt to it, to get the benefit of the security given by the bankrupt to the bank and of the real estate security then given by the bankrupt to the appellant. It was not made to appear that in any real or substantial sense the enforcement of the transaction with the bank had, or was intended or reasonably to be expected to have, the effect of benefiting the appellant otherwise than by enabling it to get the security given by the bankrupt to the bank. We conclude that the preference in favor of the appellant resulting from the enforcement of that transaction properly is measured by the value of the personal property mortgaged by the bankrupt to the bank, not by the amount paid by the bankrupt to the appellant, the payment of which did not really lessen the amount of the debt of the bankrupt to the appellant which existed before that transaction occurred. It follows that, as to the transfer by the bankrupt of the $7,800 received by him from the bank, the court did not err in limiting the amount recoverable by the appellee to the value of the personal property mortgaged by the bankrupt to the bank.

The record shows no reversible error. The decree is affirmed.