In re CHIPWICH, INC., Debtor.

ANIC, INC., Country Pride Foods, Ltd., Endico Potatoes, Inc., Interamerican Quality Foods, Inc., Richard Lanza, McCain Foods, Inc., Northam Food Trading Co., Paris Foods Corp., and UFS Industries, Inc. d/b/a Sally Sherman Foods, Plaintiffs,

v.

CHIPWICH, INC., Chipwich, Inc. d/b/a Peltz Food Corp., First Fidelity Bank, N.A., Samuel Metzger and Robert B. Peltz, Dorothea Bossio, John Does 1 through 10, 10 Corporations ABC, Inc. through XYZ, Inc. individually and d/b/a "Peltz Food Corp." and/or "Peltz Food Company", Defendants.

Bankruptcy No. 92 B 44298.

Adv. No. 93 B 8403 A.

United States Bankruptcy Court, S.D. New York.

March 14, 1994.

M. Mandell, Annandale, NJ, for McCain Foods, Inc. ("McCain") and Interamerican Quality Foods, Inc. ("IQF") collectively, plaintiffs.

J.P. Amato, Hahn & Hessen, New York City, for First Fidelity Bank, Nat. Ass'n, New Jersey (the "Bank").

J. Hassid, Swerdlin & Hassid, New York City, for Robert B. Peltz.

* Sitting by special designation.

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York,

## MEMORANDUM OF DECISION ON MOTION TO DISMISS CERTAIN AFFIRMATIVE DEFENSES

FRANCIS G. CONRAD, Bankruptcy Judge.*

This contested matter is before us [1] upon a Motion to Dismiss Affirmative Defenses to the complaint filed by Plaintiffs, under Fed. R.Civ.P. 7(b) and Fed.R.Bkrtcy.P. 7007. The issue before us is whether sellers of goods under the Perishable Agricultural Commodities Act of 1930, as amended, 7 U.S.C. §§ 499a–499s ("PACA"), who know or have reason to know the name of the proper debtor, must file a trust notice with the debtor's proper name in order to preserve their benefits.

Bank asserts that Plaintiffs' Notices of Intent under the PACA statutory trust are invalid and defective because Plaintiffs did not address and file such notices under the name of Chipwich, Inc. ("Chipwich"), the debtor herein. Plaintiffs allege that Bank should not be allowed to assert an affirmative defense that Plaintiffs' Notices of Intent under the PACA statutory trust are invalid and defective.

We deny Plaintiffs' Motion to Dismiss Bank's affirmative defenses and hold that where a PACA claimant knows or has reason to know the proper name of a debtor, the trust notice served on a debtor and filed by the seller with the United States Department of Agriculture ("USDA") must include that name.

## FACTUAL BACKGROUND

On July 31, 1992, Chipwich filed a petition in the court for reorganization under 11 U.S.C. § 101 et seq. Chipwich continues to operate its business as a debtor-in-possession.

dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. §§ 157(b)(2)(K) and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under Fed.R.Civ.P. 52 as made applicable by Fed.R.Bkrtcy.P. 7052.

The undisputed facts show that on May 11, 1988, Bank and Peltz Food Corporation ("Peltz") entered into a financing arrangement, under which Bank made periodic loans and other financial accommodations to Peltz. This was secured by a lien on substantially all of the existing and future assets of Peltz. In August 1988, Peltz and Chipwich merged. The merger resulted in the assumption by Chipwich of all of Peltz's liabilities and obligations to Bank. On February 1, 1989, Bank and Chipwich executed a Modified and Restated Loan and Security Agreement (the "Loan Agreement") under which Bank agreed to make and Chipwich agreed to repay, certain advances up to $6,000,000. Under the Loan Agreement, Chipwich granted Bank a lien on substantially all of its existing and after-acquired assets, including assets of the Peltz division.

It is undisputed that Plaintiffs (suppliers of perishable agricultural commodities to Peltz) filed their trust notices under PACA, on or around June 30, 1992, naming Peltz as debtor, instead of Chipwich. Plaintiffs allege they were doing business with Peltz and had no knowledge that Peltz had merged with and into Chipwich in 1989. But, a last-minute affadavit by McCain showed it knew that it was dealing with Chipwich. Indeed, the merger was widely publicized in various papers and journals. Thus, they argue their filing is not defective and preserved their PACA rights against Chipwich. Bank asserted an affirmative defense that Plaintiffs are not entitled to assert claims against Bank under PACA because the notices of intent to preserve trust benefits failed to name Chipwich as the debtor, depriving Bank and other creditors of constructive notice of the PACA trust.

## DISCUSSION

The particular provision of PACA for interpretation is § 499e(c), added by a 1984 amendment. That provision creates a trust upon perishable agricultural commodities. The proceeds from the sales are for the benefit of unpaid suppliers, sellers or agents, and provide the manner in which beneficiaries may preserve the benefits of the trust,

subject in certain respects to regulations issued by the Secretary of Agriculture.[2] The purpose of the PACA legislation is set forth in 7 U.S.C. § 499e(c)(1), which provides:

(1) It is hereby found that a burden on commerce in perishable agricultural commodities is caused by financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products, and that such arrangements are contrary to the public interest. This subsection is intended to remedy such burden on commerce in perishable agricultural commodities and to protect the public interest.

PACA and the regulations thereunder, 7 C.F.R. §§ 46.1 et seq., set forth the procedural steps which a PACA claimant must follow to preserve its trust benefits. The claimant must send a trust notice to the commission merchant, dealer or broker and file the trust notice with the Secretary of the USDA within certain prescribed time limits. The consequences of failure to comply are set out in 7 U.S.C. § 499e(c)(3): "The unpaid supplier, seller or agent shall lose the benefit of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker and has filed such notice with the Secretary...." The notice must not only state that it is a notice of the claimant's intent to preserve trust benefits, but "include information which establishes for each shipment: (i) The names and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor, as applicable...." 7 C.F.R. § 46.46(g)(3).

■ Section 541(d) of the Bankruptcy Code excludes from property of the estate "any equitable interest in such property that

**2.** 7 C.F.R. §§ 46.1 et seq.

the debtor does not hold." Section 499e(c) of PACA gives sellers who comply with its requirements the equitable interest in the products sold. That interest is not "property of the estate" under 11 U.S.C. § 541. See, e.g., *C & E Enterprises, Inc. v. Milton Poulos, Inc. (In re Milton Poulos, Inc.)*, 107 B.R. 715, 718 (9th Cir. BAP 1989) aff'd in part & rev'd in part, 947 F.2d 1351 (9th Cir.1991); *In re Fresh Approach, Inc.*, 51 B.R. 412, 419 (Bkrtcy.N.D.Tex.1985); *East Coast Potato Distributors v. Grant (In re Super Spud, Inc.)*, 77 B.R. 930, 931–32 (Bkrtcy.M.D.Fla. 1987). Accordingly, where trust benefits are properly preserved, a debtor merely holds legal title in trust for sellers. The equitable interest in the property remains outside the estate. See A. Morad, Bankruptcy and the Perishable Agricultural Commodities Act Trust, 7 BKRTCY.DEV.J. 291, 302 (1990). Therefore, the beneficial interest in the assets subject to a PACA trust never become property of the estate.

Cases interpreting § 499e(c) of PACA evidence disagreement and confusion among the courts on the interplay between PACA and the Bankruptcy Code. Some courts take the position that strict compliance with the statutory and regulatory provisions is required. See, e.g., *Consolidated Marketing, Inc. v. Marvin Properties, Inc. (In re Marvin Properties, Inc.)*, 854 F.2d 1183, 1186 (9th Cir. 1988); *Blair Merriam Fresh Fruit & Produce Co., Inc. v. Clark (In re D.K.M.B., Inc.)*, 95 B.R. 774, 779 (Bkrtcy.D.Colo.1989); *St. Joseph Bank & Trust Co. v. DeBruyn Produce Co. (In re Prange Foods Corp.)*, 63 B.R. 211, 219 (Bkrtcy.W.D.Mich.1986). Other courts have taken the position that substantial compliance with the statutory and regulatory provisions is sufficient to preserve trust benefits. See, e.g., *Dubin v. Carlton Fruit Co., Inc. (In re Carlton Fruit Co., Inc.)*, 84 B.R. 810, 812 (Bkrtcy.M.D.Fla.1988); *In re W.L. Bradley Co., Inc.*, 75 B.R. 505, 511–12 (Bkrtcy.E.D.Pa.1987); *DeBruyn Produce Co. v. Richmond Produce Co., Inc. (In re Richmond Produce Co.)*, 112 B.R. 364, 372 (Bkrtcy.N.D.Cal.1990).

PACA's trust provisions give greatly enhanced protection to sellers of perishable agricultural commodities that are unavailable to other creditors. This protection is incompatible with one of the fundamental objectives of the Bankruptcy Code, which is to provide equal treatment to similarly situated creditors. See *Clarke v. Rogers*, 228 U.S. 534, 544, 33 S.Ct. 587, 57 L.Ed. 953 (1913) (stating that "the fundamental purpose of the Bankruptcy Law ... is, equality between creditors"). See also *Cohen v. Drexel Burnham Lambert Group, Inc., (In re Drexel Burnham Lambert Group, Inc.)*, 138 B.R. 687, 705 (Bkrtcy.S.D.N.Y.1992).

Upholding the trust in this case would diminish the estate and prejudice its creditors in two ways. First, trust assets would be excluded from the estate. Secondly, Bank might have to disgorge payments it received from Debtor that were made from proceeds of the sale of trust assets. See *Pereira v. Marine Midland Bank, N.A. (In re Al Nagelberg & Co., Inc.)*, 84 B.R. 19 (Bkrtcy. S.D.N.Y.1988). See also *First State Bank of Miami v. Gotham Provision Co., Inc. (In re Gotham Provision Co., Inc.)*, 669 F.2d 1000, 1011 (5th Cir.1982) cert. denied, 459 U.S. 858, 103 S.Ct. 129, 74 L.Ed.2d 111 (1982) (deciding, under the Packers and Stockyards Act, the statute upon which PACA was modelled, that not only was the interest of the debtor's secured lender subordinate to the rights of the trust beneficiaries, but that lender had to disgorge payments which the debtor had paid in reduction of its debt). Disgorgement by Bank would increase its secured claim against Debtor, further diminishing payments to unsecured creditors.

■ Given PACA's adverse impact on the estate and its incompatibility with the fundamental bankruptcy principle of equality of treatment for similarly situated creditors, we hold that a PACA claimant cannot benefit from PACA, at the expense of other creditors, without having strictly complied with the statute and applicable regulations. See *In re D.K.M.B., Inc.*, supra, 95 B.R. at 779 (strictly construing the PACA statute and regulations due to the impact that a valid trust claim would have on creditors). As the court observed in *In re Marvin Properties, Inc.*, supra, 854 F.2d at 1186, the language of § 499e(c)(3) is unambiguous on its face. The same is true of § 46.46(g)(3) of the regula-

tions. We turn now to the question of whether Plaintiffs strictly complied with PACA requirements.

## APPLICATION

■ Bank contends that Plaintiffs' trust notices are invalid because (i) they did not contain the name of the debtor, Chipwich, as required by § 46.46(g)(3)(i) of the USDA regulations; and (ii) the trust notices were not addressed and served on Chipwich, as required by § 499e(c)(3) of PACA. Bank further argues that upholding Plaintiffs' trust claims would force it to disgorge loan payments made from the sale of trust assets, despite the fact it never had constructive notice of the PACA trust.

Plaintiffs contend that all their dealings were with Peltz, and that they were unaware of Peltz's merger with Chipwich. They support their contentions with invoices made out to Peltz, copies of checks from Peltz, and copies of bills of lading showing that the commodities were shipped under the Peltz name. Plaintiffs also allege that the buyer's PACA license was under Peltz's name, leading them to file their PACA trust notice under the same name.

Despite Plaintiffs' arguments, McCain knew or should have known that Peltz was acquired by Chipwich. In the affidavit of Jack Hassid, sworn to on February 3, 1994, (the "Hassid Affidavit"), Mr. Hassid stated that he was told by Mr. Prendergast, a salesman of McCain, that Prendergast was aware in 1989 that Peltz had been acquired by Chipwich and that Prendergast had discussed this fact with Paul Ouellette, McCain's credit manager and that Ouellette ordered a Dun & Bradstreet report on Chipwich. Mr. Hassid's sworn statement is further supported by the January 25, 1994 affidavit of Paul Ouellette, McCain's credit manager, stating that he had discovered a February 9, 1989 Dun & Bradstreet credit report about the Peltz/Chipwich merger misfiled in company records.

The merger of Peltz and Chipwich was publicly reported in the press and in industry guides, including Frozen Food Age, The New York Times, Crain's New York Business, and Newsday. (Hassid Affidavit, Ex. C.). Given the foregoing, McCain had both actual and constructive knowledge of the merger of Peltz with Chipwich and IQF had constructive knowledge of the merger.

■ Moreover, PACA's legislative history suggests that Plaintiffs bear the burden of knowing who they are dealing with. See H.R.REP. NO. 98-543, 98th Cong., 1st Sess. 5 (1983) reprinted in 1984 U.S.C.C.A.N. 405, 409 ("Beneficiary claimants have the responsibility of establishing through their business records the details of the transaction on which payment is sought"). The legislative history states that the PACA amendments "do not replace the need for sellers to exercise good business judgment by making necessary credit and trade rating checks, wherever possible, before agreeing to ship goods to a buyer...." Id. at 4, reprinted in 1984 U.S.C.C.A.N. 405, 407. "Under the provisions of H.R. 3867 the unpaid seller must accept the burden to preserve the trust...." Id., reprinted in 1984 U.S.C.C.A.N. 405, 407–08.

■ Plaintiffs also appear to argue that they had no option but to perfect their interests under PACA by naming Peltz, because Chipwich was not licensed under PACA. But, whether an entity possesses a PACA license or not is irrelevant with respect to liability under the trust provisions of § 499e(c). Section 499e(c) is directed to a commission merchant, dealer or broker which is defined in § 499a of PACA. Under § 499e(c) of PACA, if an entity is a commission merchant, dealer or broker, then such entity is charged with the statutory trust provision regardless of whether the entity possesses a PACA license. Therefore, even though Chipwich did not possess a PACA license, the Plaintiffs could have protected themselves as trust beneficiaries by serving and filing trust notices naming Chipwich.

For these reasons, we hold that Plaintiffs did not comply with PACA's requirements because they did not name Chipwich as debtor, as required by § 46.46(g)(3)(i) of the USDA regulations, and did not comply with § 499e(c)(3) of PACA, which requires that trust notices be addressed and served on Chipwich.

## CONCLUSION

The Motion to Dismiss Affirmative Defenses filed herein by Plaintiffs is denied. The notices provided and filed by Plaintiffs were inadequate to preserve the trust benefits created by PACA.

Bank to settle order on five days notice consistent with this Memorandum of Decision.