## POOLE v. GARRETT et al.

(Court of Appeals of District of Columbia. Submitted October 6, 1926. Decided November 1, 1926.)

No. 4481.

Executors and administrators ⊂⊃529.

Where ancillary administrator collected assets and delivered them to himself as domiciliary administrator, and thereafter converted funds, surety on bond of ancillary administrator was not liable.

Appeal from Supreme Court of the District of Columbia.

Petition by Luther C. Poole, ancillary administrator d. b. n. of the estate of Mertena Lee Poole, deceased, against the Columbia Casualty Company, as surety on the bond of John A. Garrett, former ancillary administrator of the same estate. Order dismissing the petition, and petitioner appeals. Affirmed.

Leon Pretzfelder, of Washington, D. C., for appellant.

G. B. Craighill and C. B. Tebbs, both of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. This is an appeal taken in an administration proceeding from a final order dismissing the petition of the appellant as ancillary administrator d. b. n. of the estate of Mertena Lee Poole, deceased, seeking a recovery from the appellee, Columbia Casualty Company, as surety upon the bond of John A. Garrett, former ancillary administrator of the same estate, charging an embezzlement of the assets by Garrett while serving in that capacity. The casualty company admitted its suretyship and the conversion of the assets by Garrett, but alleged that Garrett was at the same time the domiciliary administrator of the deceased, and that the conversion occurred after the assets in question had come into his possession in the latter capacity and consequently after the bond given for the ancillary administration had been satisfied and discharged. The following facts are either stipulated into the record or sustained by sufficient evidence to justify their acceptance by the lower court:

On March 28, 1923, Mertena Lee Poole, a resident of Montgomery county, Md., departed this life intestate, possessed of certain property located at her residence, and also of the following assets located in the District of Columbia, to wit, the sum of $1,178.90 on deposit with the Second National Bank of Washington, and two several promissory notes, each for $3,000, payable to decedent's order, which were in the custody of the same bank for safe-keeping.

On April 10 of the same year John A. Garrett, an attorney at law and resident of Maryland, was appointed administrator of decedent's estate by the orphans' court of Montgomery county, giving bond in the penal sum of $5,000, with the Fidelity & Deposit Company as surety. Several days later Garrett was appointed ancillary administrator of the estate by the Supreme Court of the District of Columbia, with manifest reference to the assets held in the District, giving bond in the penal sum of $6,000, with the appellee, Columbia Casualty Company, as surety. Within a week after the latter appointment Garrett obtained the two promissory notes held by the Washington Bank and also a cashier's check for $1,178.90, being the amount due from the bank. Garrett later collected the sum of $585 as interest upon the notes. These were all of the assets of the estate in the District of Columbia, and the estate owed no debts there. Garrett then returned with the assets to Rockville, Montgomery county, and there deposited the cashier's check to his credit in a local bank in an account carried by him as John A. Garrett, attorney. The two promissory notes were left with the same bank for safe-keeping. It appears that Garrett never kept separate bank accounts for the various funds held by him in trust, but invariably made his deposits, whether of his own money or trust funds, in the single account aforesaid; and correspondingly his checks were always drawn upon that account, regardless of the uses to be made of their proceeds. When Garrett deposited the cashier's check, the account showed a credit balance of $12,538.62; this was all checked out later for various purposes, none of which related to the present estate. As time passed other deposits were made to the credit of the account and similarly checked out.

In the month of July, 1924, Garrett negotiated with brokers in the city of Washington for the sale of the two promissory notes belonging to the estate, and on July 16th he procured an order of sale from the orphans' court of Montgomery county empowering him as administrator to sell at public or private sale for not less than the appraisement all the personal property of the deceased mentioned and contained in the inventory returned to the court by him as administrator on that day. Acting under this order, Garrett sold the two promissory notes for the sum of $5,400, which

sum he received at Rockville, partly in the form of cash and partly by a check made payable to him as administrator, all of which he deposited in the bank to the credit of the account of "John A. Garrett, Attorney." This deposit became part of the funds checked out by Garrett for divers purposes, none of which related to this estate. In this way Garrett, who is insolvent, wrongfully converted to his own use the entire assets aforesaid, after receiving them in Washington and taking them to Montgomery county.

On February 27, 1925, Garrett filed in the Supreme Court of the District of Columbia his first and final account as ancillary administrator. He charged himself with the cashier's check and the two notes, together with the interest received upon them, amounting in all to $7,763.90. He claimed credit in an equal amount as follows: "By account of cash paid over to John A. Garrett, domicile administrator of the orphans' court of Montgomery county, with which the administrator charged himself in the orphans' court for Montgomery county, $7,763.90. The cost of the bond for the ancillary administrator and the fees paid to the register of wills of the District of Columbia, together with all other claims have been filed in the orphans' court of Montgomery county, and have been paid and charged in the account of domicile administrator to avoid duplication." This account was in regular course approved and passed by the court.

On May 22, 1925, Garrett resigned as administrator in the orphans' court of Montgomery county, and the appellant was appointed administrator d. b. n. by that court. On July 21, 1925, Garrett resigned also as ancillary administrator in the Supreme Court of the District, and that court set aside and vacated his final account aforesaid, and appointed the appellant to serve as ancillary administrator d. b. n. in his stead. Whereupon this proceeding was brought against the Casualty Company, which had not been notified of the order vacating the settlement of Garrett's first and final account until after the filing of the petition. The petition was heard upon evidence as aforesaid, and was dismissed, and this appeal was taken from that ruling. It appears furthermore that since the entry of the order now upon appeal a judgment for $5,000 has been recovered in behalf of decedent's estate against the Fidelity & Deposit Company as surety upon the bond given by Garrett as domiciliary administrator, upon the theory that Garrett had actually received the assets in question in that capacity in Maryland before he converted them to his own use. The claim of the appellant has therefore been satisfied to the extent of $5,000, but he seeks to hold the casualty company for the residue of the defalcation, to wit, the sum of $2,763.90.

In our opinion the ruling of the lower court was right. It was the first duty of the ancillary administrator to collect the assets situate in the District of Columbia, and this was promptly done by him. It was then proper for him to pay or deliver these assets to the domiciliary administrator of the estate, and this was done by Garrett, both in fact and in contemplation of law, and there was no wrongful conversion of the assets within the ancillary jurisdiction. To the contrary, the assets were in fact taken to the domiciliary jurisdiction, with the manifest intent and understanding that they were to be accounted for thenceforth by the domiciliary administrator. This understanding was acted upon by Garrett himself, and also by the orphans' court of Montgomery county, which afterwards authorized the sale of the notes as assets in his hands as domiciliary administrator. The same understanding was adopted in the first and final account of Garrett as ancillary administrator in the settlement of that trust. And indeed it has since been acted upon by the domiciliary estate, which has recovered judgment upon the bond of the domiciliary administrator for the conversion of these assets. It is clear that the assets could not at the same time be chargeable against both the ancillary and domiciliary administrators, nor could the sureties upon both of the respective bonds be liable for the conversion. And under all the circumstances it is plain that at the time of the default the assets were chargeable only against the domiciliary administrator and his sureties.

This view is favored by the law, where the same person occupies such a dual relation to a trust fund. In United States v. May, 4 Mackey (15 D. C.) 4, it is said that, when an "executor, who is also guardian, has no further use for assets as executor, he will be treated as holding them as guardian, whether he has settled his account or not." No particular form, such as indorsement from himself as executor to himself as guardian, is necessary to effect a transfer, that being done by the law. In Seegar's Estate, 6 Har. & J. (Md.) 162, 14 Am. Dec. 265, it is said: "The administrator having in his hands a balance that ought to be paid over to the guardian, and one person representing both these characters, he cannot pay the money over to himself, nor, if the payment was refused, is there any person who could enforce it. Under these

circumstances, the law, by implication, considers it in the hands and possession of the party in that representative character that ought to receive it." See Stokely's Estate, 19 Pa. 476; Bell v. People, 94 Ill. 230; Commonwealth v. Messinger, 237 Pa. 1, 85 A. 26; Emery v. Batchelder, 132 Mass. 452; Mackey v. Coxe, 18 How. 100, 15 L. Ed. 299; 24 C. J. 1066, 1126 (citations).

Various assignments of error are presented by the appellant, relating to the rejection of testimony offered at the trial below, but we do not find them to be substantial.

The order appealed from is therefore affirmed, with costs.