828

UNITED STATES FIDELITY & GUAR-
ANTY CO. v. KLEIN.
No. 5233.

Court of Appeals of the District of Columbia.
Argued Nov. 9, 10, 1931.
Decided Dec. 7, 1931.

Edwin C. Brandenburg and Louis M.
Denit, both of Washington, D. C., for ap-
pellant.

Lawrence Koenigsberger, of Washing-
ton, D. C., for appellee.

Before MARTIN, Chief Justice, and
ROBB, VAN ORSDEL, and GRONER, As-
sociate Justices.

GRONER, Associate Justice.

Susan B. Johnson, who at the time of her
death resided in Texas, devised by will in
trust to her daughter for life certain prop-
erty owned by her in the District of Colum-
bia. Upon the death of the daughter, the
trust was to continue until the youngest child
of the daughter reached the age of 21 years,
at which time it was to terminate and the
property to pass in fee simple to such child
or children. Alexander G. Bentley was
named in the will as executor and trustee,
and was permitted to qualify without surety.
The will conferred no power of sale. In 1920
Bentley, as trustee, and Corinne McMurray,
the beneficiary of the life estate, filed a bill
in the Supreme Court of the District of Co-
lumbia naming as defendants all persons in
being having rights or possibilities of rights
in the property, and alleging that it was in
the interest of all concerned that the real es-
tate be sold and the proceeds invested under
the court's direction for the benefit of the
same persons who would be entitled to the
real estate. The lower court passed a decree,
December 31, 1920, directing sale of the
property and appointing Bentley trustee to
make the sale. The decree required bond in
the penalty of $7,000. Bentley filed the bond
with appellant as surety. The condition of
the bond was that Bentley should "well and
truly perform his duties as such trustee and
in all things obey such order and decree as
the court shall make in the premises."

In May, 1921, Bentley reported he had re-
ceived an offer of $6,900 in cash for the land.
On this report there was an order to show
cause, and in June, 1921, a decree passed di-
recting that the real estate be conveyed to
the purchaser upon compliance with the
terms of sale. The cause was thereupon re-
ferred to an auditor to take and state the
account and report the proper disposition of
the fund. The auditor reported August,
1921, showing a balance in Bentley's hands of
$6,145.10, which he recommended be retained
by him as trustee for investment under direc-
tion of the court. No exceptions having been
filed, an order was passed September 2 con-
firming the report. The decree directed "that
the said trustee pay over to himself as trustee
for the estate of Susan B. Johnson, deceased,
the net proceeds of the sale of the said real
estate, as shown by the said report, namely,
the sum of six thousand one hundred and
forty-five dollars and ten cents ($6,145.10),
to be invested by him under the direction of
this Court." To this decree there were no ob-
jections or exceptions.

Bentley, as testamentary trustee, thereup-
on applied to the court for authority to in-
vest the fund in real estate notes, and on
October 14, 1921, the court passed an order
authorizing the investment of $6,000 of the

fund in such notes and the balance in Liberty bonds. Accordingly, Bentley made the purchase of notes and bonds, and, April of the following year, reported to the court "that pursuant to an order passed herein on the 2nd day of September, 1921, the said trustee received from himself as the trustee heretofore appointed in the above-entitled cause to sell the real estate decreed in said cause to be sold the sum of $6,145.10, representing the net proceeds of the sale of the said real estate, as shown by the report of the auditor," and that pursuant to the order of the 14th of October, 1921, he had used the entire sum in the purchase of secured real estate notes and Liberty bonds, and that he held the said notes and bonds as testamentary trustee upon the trusts declared in the will of the said Susan B. Johnson, deceased; and likewise to this report there were no objections or exceptions.

Early in 1923, the trustee, desiring to change the form of investment, asked leave of the court to exchange the notes for other notes, and, leave being granted, in April, 1923, Bentley, as testamentary trustee, reported the exchange. Thereafter, in 1924, 1925, and 1926, Bentley, in making report to the court showing the state and condition of the trust property, described himself as trustee appointed by the order of the court in the suit originally begun for the purpose of the sale of the land. In 1927 he failed to make any report, and, on proceedings begun to compel a report, an order was entered holding him in contempt. He committed suicide, and it then appeared that he had improperly used the trust and was in default. A new trustee was appointed by the court, who made due demand on the appellant (the surety), which demand being refused, suit was brought against the appellant in the Supreme Court of the District to recover on the bond. The trial judge held against the surety, and entered a decree in favor of appellee, and the appeal is from that decree.

The learned trial judge thought that section 482 of the Code of the District of Columbia was controlling, but that, even if not controlling, the surety, having submitted to the jurisdiction of the court (in the execution of the bond), could not be released except by an order to that effect, and, having accepted premiums from the trustee over the entire period, was estopped to deny its liability. The Code section relied upon (section 482, D. C. Code 1924, title 3, § 7, D. C. Code 1929) provides as follows:

"If any person appointed by order or decree of the court to the office of trustee or to any other fiduciary office shall give bond, with surety or sureties, for the due performance of his duties, he shall not be allowed to discharge said bond by receipts, releases, or acquittances from himself, as attorney for parties interested, to himself as such trustee or other fiduciary; but the funds or estate for the due application whereof he is responsible shall be considered as remaining in his hands, and said bond shall continue in force as against both principle and sureties until said funds or estate shall be fully accounted for and paid over or delivered to the parties interested therein, or their attorney, other than said trustee or other fiduciary duly authorized to receive the same."

We think it has no applicability. By its terms, the bond of a trustee is not to be released in any case in which such trustee, as attorney for the parties in interest, receipts to himself as trustee, for money or property belonging to said parties. The purpose of the section is obvious. It was passed to prevent a trustee, who is also the attorney of the parties in interest, from paying over to himself as such attorney the fund to which his clients are entitled, and thus to discharge his bond. It has no relation either in the language used or by intendment to the case of the payment by a trustee to the person, other than an attorney, entitled thereto—in this case the testamentary trustee—of a fund which the latter is entitled to demand either by virtue of the terms of his appointment or by an order of a court having jurisdiction, and this is so even though the trustee having possession and the trustee entitled to the fund are the same person. Nor are we any more impressed with the other ground on which the court below fixed liability on the surety. It is quite true that appellant continued from year to year to demand a premium on the bond and Bentley to pay it. Whether, as is suggested in the memorandum opinion of the lower court, it was paid out of the trust fund, we are unable to determine, because, as far as we can see, there is no evidence on that subject, but this we regard as immaterial.

It was paid, and we think it may be conceded that the payments thus made continued the bond in effect, but we do not see that this helps, for it is obvious from what has already been said that the conditions of the bond were fully performed when Bentley, as principal in the bond, paid over to himself as testamentary trustee the whole corpus of the trust, and as such trustee acknowledged the receipt thereof, and this conclusion is

emphasized when it is considered that this was done in obedience to an express decree of court, and this decree was in all respects regular and within the power of the court to make. The fact that it purported to confirm the auditor's report, in which, as we have already seen, there was a recommendation that the fund should be invested by Bentley as sales-trustee, and at the same time required Bentley as sales-trustee to turn the fund over to himself as testamentary trustee for investment under the direction of the court, was not such an inconsistency as would render the decree void. The confirmation of the auditor's report was in general terms, and applied, of course, to everything in the report not specifically altered by the express terms of the decree; but that the court had the power to direct the trustee, who had made the sale, to turn over the money to the trustee designated in the will to handle the trust property, for investment under the direction of the court, is a proposition which we think may not be denied, and, in these circumstances, the transfer of the fund was in all respects regular.

The condition of the bond, as we have seen, was that Bentley should perform his duties as such trustee and obey such orders as the court should make in the premises. The purpose of the bond was to secure the faithful performance by Bentley of his duties as trustee to sell the property and to account for and pay over the proceeds as the court should direct. The record shows these duties to have been properly discharged. He sold the property, reported the sale, and had his account stated, and, in accordance with the decree of court and without objection, paid over the proceeds to himself as testamentary trustee, and as such made due acknowledgment thereof, and requested and received the court's instructions as to the sort of investment he should make. This is sufficient, we think, to establish the due performance of the conditions of the bond, and in this view it is of no consequence whether the bond is still subsisting, since, its conditions being performed, nothing remains for which the surety is liable. Moulton v. Cornish, 33 App. D. C. 228. If another than Bentley had occupied the position of the testamentary trustee, it would hardly be contended, in the circumstances narrated, that the default of that person would create a liability under the bond here in question, and this obviously because the surety in the bond had assumed no obligation with relation to such other person, and, as we see it, there is no greater obligation because the two trusteeships were filled by the same person, for the appellant never did agree to be responsible for the faithful performance of Bentley's duties as testamentary trustee, and in that capacity Bentley is just as much a stranger to it as any person who instead might have held that position. Clarke v. Rogers, 228 U. S. 534, 33 S. Ct. 587, 57 L. Ed. 953.

The mistake made was not the transfer of the funds from the sales trustee to the testamentary trustee, but the failure of the court also to require bond of the latter, but the omission, doubtless never brought to the attention of the court, unfortunate as it may be, will not justify us in going so far as to transfer the hardship and disaster to the shoulders of appellant because it failed, at the time of the payment by its principal of the fund for which it had become surety, to check up its responsibility and receive its formal discharge. We are not unmindful of the rule that in the case of bonds executed for profit the law does not have the same solicitude as in the case of one who voluntarily offers to answer for the obligation of another, but that rule may not be invoked to substitute a new and different obligation for that which the surety executed and to create a new liability to meet the exigencies of an unfortunate situation.

We have carefully examined the cases cited by counsel for appellee, but do not find in them anything which will warrant a different view from that we have indicated we must reach.

Reversed.