479 F.2d 1228
 156 U.S.App.D.C. 245
 Bernard E. SCHILT, Esquire, Successor Guardian of the Estate
of John Wesley Duvall, Jr., Appellant,
v.
Myrtle B. DUVALL, Trustee, and National Surety Corporation,
her Surety, Appellees.
 No. 72-1482.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued March 12, 1973.
Decided May 30, 1973.
 
 1
 Fred Warren Bennett, Washington, D. C., with whom James R. Sharp, Washington, D. C., was on the brief, for appellant.
 
 
 2
 James K. Foley, Silver Spring, Md., for appellee, National Surety Corp.
 
 
 3
 Before LEVENTHAL and ROBB, Circuit Judges, and JAMESON,* Senior United States District Judge for the District of Montana.
 
 JAMESON, District Judge:
 
 4
 This is an appeal from an order of the District Court entered March 7, 1972 denying the appellant's motion to surcharge the appellee trustee and her surety for the trustee's alleged misappropriation of trust funds.
 
 A. Factual Background[1]
 
 5
 By order entered March 29, 1968 in Civil Action 2915-67, appellee Myrtle B. Duvall was appointed trustee to convey the interest of John Wesley Duvall, her 16 year old son, in certain real estate in the District of Columbia, "provided that she file an undertaking in the amount of $14,000.00 with approved surety. * * *" A surety bond in that amount executed by appellee National Surety Corporation was duly filed.
 
 
 6
 On June 10, 1968, Mrs. Duvall filed a "Sixty Day Report under Rule 22" showing that she held a certificate of deposit in the amount of $12,609.61 in the American Heritage Bank and Trust Company in Colorado Springs in the name of "Myrtle B. Duvall, Trustee in C.A. 2915-67 for John Wesley Duvall." No certificate of deposit, however, was ever issued to Mrs. Duvall by Heritage Bank and Trust Company.[2]
 
 
 7
 Also on June 10, 1968 Mrs. Duvall executed in Colorado for filing in the District of Columbia an "Annual Report under Rule 22" showing a deposit of $12,609.61 in the National Bank of Washington in the name of "Myrtle B. Duvall, Trustee in C.A. 2915-67 for John Wesley Duvall."[3] The deposit of $12,609.61-representing the proceeds of the sale-was in fact made in the National Bank of Washington on June 21, 1968. With interest of $126.09 credited October 1, 1968 the account totalled $12,735.70.
 
 
 8
 At about this time Mrs. Duvall, with her son, apparently decided to take up permanent residence in Colorado. She began a series of steps to transfer her son's estate from Washington, D. C. to Colorado, and to obtain authority from the Colorado courts to act as his fiduciary in that jurisdiction.
 
 
 9
 On July 9, 1968 Mrs. Duvall was appointed Guardian of John Wesley Duvall, Jr., by the Probate Court of the City and County of Denver and State of Colorado and filed a personal bond in the sum of $500.00 "until money is received from Washington, D. C."
 
 
 10
 On August 28, 1968 Mrs. Duvall filed in the District Court for the District of Columbia a "petition to transfer trust funds" to "herself in the State of Colorado", reciting her domicile and appointment as guardian in Colorado. On the same date the court entered an order providing:
 
 
 11
 "1. That the Trustee, Myrtle B. Duvall, submit a final account and report with regard to the Trust account of John Wesley Duvall, Jr.
 
 
 12
 "2. FURTHER ORDERED that after approval by the Court of the report on [sic] the Auditor on the final account and report of Myrtle B. Duvall, trustee, and the payment of administrative costs, the trustee is hereby authorized to transfer the balance of the assets to Myrtle B. Duvall guardian of the estate of John Wesley Duvall, Jr., Minor in the Probate Court in and for the City and County of Denver and State of Colorado, No. P-47737."
 
 
 13
 A "final account" filed August 30, 1968 for the period March 29, 1968 to August 2, 1968, and executed by Mrs. Duvall on August 2, 1968, reports the sale of the real estate for $12,601.61. An "Annual Report under Rule 22" and "Sixty Day Report under Rule 22", both filed September 24, 1968, show the deposit of that amount in the National Bank of Washington, in Mrs. Duvall's name as trustee.
 
 
 14
 On October 18, 1968 Mrs. Duvall withdrew $10,500.00 from the trustee savings account in the National Bank of Washington, obtaining a cashier's check for $10,000.00 payable to "Myrtle B. Duvall, for credit to #D 64740-8, c/o Columbia Savings and Loan Association",[4] Colorado Springs, Colorado. On October 17, 1968 Mrs. Duvall had applied for a savings account at Columbia Savings and Loan Association in her name, No. D-64740-8, as Trustee for John Wesley Duvall, Beneficiary, a Totten trust agreement.[5] On October 21, 1968 the check for $10,000.00 was deposited in that account, and $10,000.00 was withdrawn the same day.
 
 
 15
 An additional $2,000.00 was withdrawn from the account in the National Bank of Washington on January 14, 1969 through a cashier's check payable to "Myrtle B. Duvall", and $200.00 was withdrawn on March 8, 1969.[6]
 
 
 16
 On May 26, 1969 the "Report of the Auditor" was filed. The report reviewed the account for the period March 29, 1968 through August 2, 1968, referring to the "Sixty Day Report filed June 10, 1968, First-and-Final Account (designated Final) filed August 30, 1968, Amended Sixty Day Report filed September 24, 1968 and Report filed September 24, 1968 of Myrtle B. Duvall, Trustee." It concluded that the unpaid distributive shares, as of August 2, 1968, consisted of:
 
 
 17
 "To: Edna Belle Duvall $ 156.75
 
 Myrtle B. Duvall 19.00
 
 18
 John Wesley Duvall, Jr. 12,718.86"
 
 The auditor's report concluded:
 
 19
 "8. After confirmation of the Report of the Auditor, order to be prepared and presented by the Trustee, and after full settlement and distribution has been made and a verified statement to that effect filed with the Clerk of the Court as provided by Rule 22(g), together with vouchers, receipts, or canceled checks evidencing final distribution, the Auditor recommends that the Trustee and her surety stand discharged, except as to prior defaults, if any."
 
 
 20
 By order dated June 20, 1969 the court confirmed the report of the auditor and "ordered that Myrtle B. Duvall file the Certificate of Distribution and Settlement in compliance with Local Civil Rule 22g, after which, trustee and the Surety on his undertaking shall stand discharged, except for prior defaults, if any."
 
 
 21
 On August 22, 1969 the trustee filed a "Certificate of Distribution and Settlement by Fiduciary under Paragraph (g) of Local Civil Rule 22", reciting that she had "made complete distribution of the funds entrusted to her * * * in compliance with decree of March 29, 1968."[7] This was executed May 5, 1969-before the report of the auditor was filed. No certificate has been filed stating that the trustee has made distribution pursuant to the auditor's report and order of the court confirming the report or the court order entered August 28, 1968; nor does the file contain any evidence that "vouchers, receipts or cancelled checks evidencing final distribution" were filed.[8]
 
 
 22
 On August 4, 1969 Mrs. Duvall opened two more savings accounts in the Colorado Savings and Loan Association, both in the form of Totten trusts, in the name of Myrtle B. Duvall as trustee for John Wesley Duvall. Account No. 05-87375-5 was opened with $8,000.00, and No. 05-60571-2 with $1,293.01.
 
 
 23
 On January 5, 1970 Mrs. Duvall borrowed $14,540.98 from the Columbia Savings and Loan Association, giving them her note and pledging the three savings accounts. On May 5, 1971 the account balances were:
 
 D-64740-8 $ 8.03
 05-87375-5 7,743.53
 05-60571-2 15.78
 
 24
 On October 30, 1970 an order was entered by the probate court in Colorado removing Mrs. Duvall as guardian of the estate of John Wesley Duvall, Jr., upon a finding that the estate "was not properly administered." Bernard E. Schilt, appellant, was appointed successor guardian, and letters of guardianship were issued to him on May 3, 1971.
 
 
 25
 By letter dated July 19, 1971 the Columbia Savings and Loan Association refused appellant's demand for the surrender of the Totten trust accounts by reason of the fact that they had been pledged to secure Mrs. Duvall's loan and the loan was delinquent.
 
 
 26
 The motion to surcharge the trustee and her surety was filed by appellant on January 3, 1972. Following the oral argument on February 24, 1972 the motion was denied, the court concluding that the "motion comes too late to try to surcharge the surety * * *".[9] A formal order was entered on March 7, 1972. Appellant filed a motion for reconsideration, which was denied on April 5, 1972, the court finding:
 
 
 27
 "(1) That petitioner's motion to surcharge rests on a single authority, D.C. Code Sec. 28-2504, which is directed toward attorney/trustees and sureties thereof, and that such provision is inapplicable to the case at bar, see United States Fidelity & Guarantee Co. v. Klein, 60 App.D.C. 354, 54 F.2d 828, cert. denied 285 U.S. 544 [52 S. Ct. 394, 76 L.Ed. 936] (1931);
 
 
 28
 "(2) That the report of the auditor in this case, disclosing no illegal or improper transactions on the part of the trustee, has not been the subject of any objection;
 
 
 29
 "(3) That the trustee and surety have been discharged by order of the Court; and
 
 
 30
 "(4) That petitioner has made no showing that the funds-removed from this jurisdiction by the trustee prior to the order confirming the report of the auditor and discharging the trustee and surety-were expended by the trustee against the interests of her minor son".
 
 
 31
 Two related issues are presented on this appeal: (1) whether the trustee and her surety were discharged from liability by the order confirming the auditor's report and certificate of distribution and settlement filed by the trustee; and (2) whether there was a misappropriation of funds in the District of Columbia, constituting a "prior default" under the order confirming the auditor's report.
 
 
 32
 B. Effect of Order Confirming Auditor's Report
 
 
 33
 Both the auditor's report and order confirming it required the filing of a certificate of distribution and settlement in compliance with Rule 22(g), "after which" the trustee and her surety would "stand discharged, except for prior defaults, if any." The certificate filed by the trustee failed completely to meet the requirements of either the court order or Rule 22(g). Although filed subsequent to the order confirming the report, it was actually executed prior to the report. It recited compliance with the order appointing the trustee to convey the property and receive the proceeds of the sale. Nothing was ever filed to show compliance with the recommendations of the auditor and the court order confirming his report.[10]
 
 
 34
 All of the withdrawals from the National Bank of Washington were made prior to the filing of the auditor's report. In making the withdrawals the trustee failed to comply with the order of August 28, 1968: (1) that she submit a final account and report, and (2) that after approval of the report of the auditor on her final account she transfer the balance of the assets to "Myrtle B. Duvall, guardian of the estate of John Wesley Duvall, Jr., Minor in the Probate Court In and for the City and County of Denver and State of Colorado, No. P-47737."
 
 
 35
 The so-called "final account" filed on August 30, 1968 was executed on August 2, 1968 and covered the period ending on that date. No true "final account" covering the period subsequent to that date was ever filed. Between August 2, 1968 and May 5, 1969, when Mrs. Duvall executed the so-called "certificate of distribution", she made the improper and unauthorized withdrawals of the trust funds.
 
 
 36
 Appellee surety argues that the auditor presumably had all documents and must have known of the transfer of the funds to Colorado at the time of the audit. There is no evidence to support that assumption. As noted, the audit covered the "final account" for the period ending August 2, 1968. On that date the funds were still on deposit in the National Bank of Washington. All of the defaults occurred subsequent to the period covered by the report, but prior to the filing of the report.
 
 
 37
 Under these facts we find no merit in appellee's contention that the order confirming the auditor's report became res judicata. Nor was appellant required to seek to set aside the auditor's report.[11]
 
 
 38
 C. Trustee's Default and Misappropriation of Trust Funds
 
 
 39
 16 D.C.Code Sec. 601 (Supp. V, 1972) provides for entry of a judgment against a trustee and surety "upon default by the principal in any of the conditions" of the undertaking or bond. The judgment may be entered, upon motion, in the action in which the undertaking is filed, as an alternative to an independent action. Schmidt v. Smith, 120 U.S.App.D.C. 74, 344 F.2d 168, 169 (1965).
 
 
 40
 Appellee surety contends that there was no default through misappropriation of funds in the District of Columbia and that any misappropriation or misuse of trust funds took place in Colorado while Mrs. Duvall "was guardian." It is true, as appellee argues, that where a trustee transfers property to "himself in another capacity in accordance with his duty or authority", the surety is not liable for subsequent defalcations."[12] Here, however, the trustee failed to transfer the assets to herself in her capacity of guardian, as required by law and express order of the court. Instead the funds withdrawn from the account in the National Bank of Washington were paid to her individually or to her credit in a Totten trust in Colorado.[13] This was in itself a misappropriation of the trust funds. It contributed to the eventual conversion by making the minor's funds available for Mrs. Duvall to pledge them for her own use. This would not have been possible had she deposited the funds in the guardianship account pursuant to the court's order of August 28, 1968. 5A Michie, Banks and Banking, Secs. 57e, 91.
 
 
 41
 The unauthorized withdrawals of the trust funds constituted "prior defaults" for which the surety is liable.[14]
 
 D. Sufficiency of Evidence
 
 42
 Appellee surety contends finally that (1) the documents upon which appellant relies were not properly in evidence and (2) there was no proof of the amount of any misappropriation.
 
 
 43
 In its opposition to appellant's motion appellee set forth as one of eleven grounds that the motion was filed "with allegations, opinions and conclusions unsupported by affidavit or admissible evidence." Thereafter appellant filed his affidavit reciting that the statements in the motion were true to the best of his knowledge, information and belief.
 
 
 44
 The hearing consisted of statements of counsel for the respective parties.[15] Counsel for the surety contended (1) that the "attempt now to attack the report of the auditor" came too late, and (2) "that the auditor, at the time of the report was aware of the fact that funds had already been transferred to Colorado and were not in this jurisdiction." He argued also that the motion "contains a series of allegations, none of them under oath, none of them verified."
 
 
 45
 The court did not rule upon the admissibility of the evidence, but concluded that a "certificate of distribution is in the file," and that the "motion comes too late to try to surcharge the surety." Before the court at the hearing were the motion with attached copies of documents, appellant's affidavit, and appellee surety's written opposition to the motion. While it does not appear that the original documents were formally offered in evidence, neither does it appear that it was necessary.
 
 
 46
 In its opposition to the motion the appellee did not deny the authenticity of any of the documents or deny any of the statements of fact set out in the motion or in the documents. The order of the district court recited that it was based "[u]pon consideration of the pleadings filed herein". Under these circumstances, it appears that the court gave judgment on the pleadings, and that it was not necessary for the appellants to offer the documents into evidence.
 
 
 47
 Since the pleadings show a misappropriation and a prior default under the terms of prior court orders, appellant was entitled to judgment on the pleadings. The pleadings do not, however, indicate the final amount of the misappropriations, including interest due.[16]
 
 
 48
 The order of the district court is reversed, and we remand for a determination of the amount of the surcharge.
 
 
 49
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. Sec. 294(d)
 
 
 [1]
 The proceedings and transactions with which the court is concerned are somewhat complicated and confusing and may be best understood by setting them out in chronological order
 
 
 [2]
 A letter from the president of the American Heritage Bank and Trust Company, dated December 23, 1971 states that on May 13, 1968 Mrs. Duvall brought to the bank a check for $12,609.61 with the request that it be placed in a certificate of deposit. She was informed that the check would have to be sent for collection before this certificate could be delivered. She did not make the deposit but did obtain a photo copy of the certificate, which was never issued
 
 
 [3]
 It is uncertain when this report was filed. The filing date of June 20, 1968 was stamped on the report, but crossed out
 
 
 [4]
 The remaining $500.00 of the withdrawal is apparently unaccounted for
 
 
 [5]
 A Totten trust is a tentative trust, revocable at will. The beneficiary has no right or title to the deposit until the death of the trustee. While the trustee lives, he has full control over the deposit. See 10 Am.Jur.2d Banks, Sec. 392
 
 
 [6]
 On May 29, 1969, a deposit of $109.25 was made in the National Bank of Washington account, and on July 1, 1969 a check for $127.17 was issued to "Myrtle B. Duvall."
 
 
 [7]
 This was the order confirming the contract for the sale of the property and appointing Mrs. Duvall trustee to convey the minor's interest
 
 
 [8]
 Rule 22(g) provides:
 "(g) Statement of Distribution and Settlement. Promptly after full distribution and settlement of a trust estate the fiduciary shall file with the Clerk a verified statement to that effect, together with vouchers, receipts, or cancelled checks evidencing final distribution." (emphasis supplied)
 
 
 [9]
 This was the primary contention of appellee trustee at oral argument in the District Court, although it is not urged in its brief on this appeal. The court relied upon the order confirming the auditor's report and his conclusion that a certificate of distribution had been filed in compliance therewith
 
 
 [10]
 A certificate of distribution and settlement properly prepared in compliance with the court's orders would have revealed the withdrawal of the trust funds from the National Bank of Washington
 
 
 [11]
 There is no evidence that the auditor's report was in any respect incorrect. It sets forth accurately the accounting transactions pertaining to the sale of the property and the proper allocation of the proceeds as of August 2, 1968
 
 
 [12]
 This was the holding in Poole v. Garrett, 56 App.D.C. 378, 15 F.2d 892 (1926), upon which appellee surety relies. There an ancillary administrator collected assets and delivered them to himself as domiciliary administrator, and thereafter converted funds. The court held that the surety bond of the ancillary administrator was not liable
 
 
 [13]
 As noted above, the deposits in the Columbia Savings and Loan Association were Totten trusts. A letter to appellant dated May 5, 1971 from the Association's resident counsel stated that as far as he could determine the "Association had no knowledge that any of these funds were in fact belonging to the minor's estate."
 
 
 [14]
 The District Court assumed, improperly we think, that appellant's right to recover depended upon D.C.Code Sec. 28-2504 (1967), and cited United States Fidelity & Guar. Co. v. Klein, 60 U.S.App.D.C. 354, 54 F.2d 828 (1931), cert. denied, 285 U.S. 544, 52 S.Ct. 394, 76 L.Ed. 936 (1932)
 In the Klein case, however, there was no basis for recovery other than the cause of action asserted under Sec. 28-2504. That is, there was no question that both the sale trustee and his surety had been fully and properly discharged at the time of the transfer; the testamentary trustee to whom the transfer was made took full possession of the sale proceeds in his fiduciary capacity; all conditions of the discharge order were fully performed by the sale trustee; and there was no allegation that the sale trustee had in any way deviated from or breached the terms of his undertaking prior to his discharge. As a result, disallowance of the purported statutory claim left plaintiff with no cause of action against the surety.
 In the case at bar, as in Klein, no cause of action lies under Sec. 28-2504. But appellant also contends that there were misappropriations of funds prior to the discharge proceeding. These misappropriations were unauthorized withdrawals of trust funds and constitute "prior defaults" which give rise to an independent cause of action on the surety bond, and for which the surety is liable.
 
 
 [15]
 The statements were relatively brief and did not relate to many of the facts herein set forth and considered on this appeal
 
 
 [16]
 It appears that $12,609.61, the proceeds of the real estate sale, plus $126.09 interest to October 1, 1968 was deposited in the Washington, D.C. trust account. Mrs. Duvall's misappropriations apparently began with unauthorized withdrawals of $12,700, but it also appears that Mrs. Duvall made another deposit of $109.25 on May 29, 1969, and on July 1, 1969 made another withdrawal of $127.17